| | | |
|---|---|---|
| Richard C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19 CV 50013 |
| | ) | Magistrate Judge Iain D. Johnston |
| Andrew Saul, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard C., who is now 60 years old, worked for a number of years doing

computer assisted design. This work was done sitting down. In May 2015, he was fired from his

job.[1] The next month, he filed for Title II disability benefits, claiming that he was disabled based

on foot and back problems making it difficult to walk and to concentrate while sitting. R. 181.

The administrative law judge held a hearing in May 2017; plaintiff and a vocational expert

testified. Several months later, the ALJ issued a written decision finding plaintiff could do

sedentary work subject to certain exceptions, the relevant one being that he be allowed to

alternate between sitting and standing. The ALJ found that plaintiff's testimony was only

partially credible because he had been able to work for 16 years with the same foot and back

problems and because he only received conservative treatment.

---

[1] At the hearing, plaintiff testified that he was not told why he was fired. When asked if he had any suspicions why, plaintiff stated: "I had been in conflict with my company over my handicap." R. 27.

The following facts provide background and an initial framework to understand the issues discussed below:

- In 1999, plaintiff was injured in a motorcycle accident. He underwent surgery to repair the fractures. This surgery left him with nerve problems in his left foot and a shortened right femur. (Dkt. #24 at 2)

- On July 1, 2014, which was 10 months before plaintiff filed for disability, Dr. Thomas Dwyer wrote a one-paragraph letter stating that plaintiff's left foot neuropathy would "limit [his] normal working activities." Plaintiff was then trying to replace a handicap parking permit. (R. 302, 343)

- On September 11, 2015, plaintiff was examined by Dr. Ramchandani, a consultative examiner who issued a report. (Ex. 6F)

- From August to October, 2016, plaintiff participated in 10 physical therapy sessions. (R. 376)

- In the fall of 2016, plaintiff treated with Dr. Evelyn Otengbediako, a pain specialist, who twice administered an injection. (R. 74)

- On March 6, 2017, Dr. Basith Osmani completed a medical questionnaire opining, among other things, that plaintiff should be limited to two hours sitting.

Plaintiff was represented by counsel at the administrative hearing, but at some point after the ALJ's ruling, plaintiff changed to his current counsel who filed this appeal. Counsel filed an opening brief, and the Government then filed a response. A date was set for the reply brief, but none was filed. Noticing that no reply had been filed, this Court issued a minute order setting a new date for the filing of the reply, but counsel never filed one. Dkt. #25.

Plaintiff raises three main arguments in his opening brief. First, he argues that the sit-stand option improperly requires employers to provide an accommodation of a "modified workstation." Second, he argues that the sit-stand option is inconsistent with the assumption that a person doing sedentary work sits six hours in the workday. Third, he argues that the ALJ engaged in cherrypicking in various ways.

The Government responds specifically to each of these three arguments, but the overarching theme is that this Court should not second-guess the ALJ's reasonable interpretation of the evidentiary record. Perhaps the best way to provide a concise overview of the Government's arguments is to simply quote the introduction to its brief. It is only one paragraph, but it provides a well-written and concise overview. Set forth below is a screenshot:

**Introduction**

Plaintiff lost his job and applied for disability the following month alleging he had become unable to perform his sedentary job due to back pain and foot neuropathy that began decades prior. Plaintiff did not seek any treatment for more than a year. When he did his doctor recommended conservative treatment. Plaintiff reported that his treatment provided significant relief. He is now claiming it was ineffective even though he declined to explore additional treatment options with a pain specialist. Despite this treatment history and the dearth of objective records to support plaintiff's claims — just 62 pages of medical records — the Administrative Law Judge gave plaintiff's subjective symptom reports the benefit of the doubt in finding that he was limited to sedentary work with an accommodation for sitting and standing as needed. The ALJ then questioned a vocational expert who stated these limitations still allowed him to perform the type of work he had done previously. Plaintiff argues that the ALJ should have included additional limitations and that the sit/stand option precludes past work, but the ALJ's fact-finding in this case was supported by substantial evidence and a thorough analysis.

Dkt. #24 at 1.

As noted above, plaintiff's counsel chose not to file a reply brief despite being given two chances. Perhaps after reading the Government's brief, counsel concluded that there were no good counter-arguments. Or perhaps, going in the other direction, counsel believed that her opening brief had adequately anticipated and preemptively refuted the Government's arguments. Although the latter scenario seems highly unlikely, if that were in fact counsel's reasoning, then counsel should have submitted a short statement indicating that this was counsel's position. In

any event, because no reply brief was filed, an argument could be made that plaintiff has waived some or all of his arguments. *See generally Ennin v. CNH Indus. Am.*, 878 F.3d 590, 596 (7th Cir. 2017) ("Where a brief is permitted as a matter of right a party must file it or risk waiver of any arguments it has neglected to raise"); *Britney S. v. Berryhill*, 366 F.Supp.3d 1022, 1030 (N.D. Ill. 2019) (plaintiff chose not to file a reply brief and thus "never responded to any of the Commissioner's well-reasoned points, and he has thus waived the opportunity to do so"). Although this Court will not find that plaintiff's arguments are waived, the Court does believe that counsel's failure to challenge the Government's well-reasoned arguments lessens the need for an extensive analysis. *See Fabricko Acquisition Corp. v. Prokos*, 536 F.3d 605, 609 (7th Cir. 2008) (it is "not the job of this court to develop arguments" for the parties).

Based on this Court's reading of the ALJ's decision and the parties' briefs, the Court finds that the following four rationales were the main ones relied on by the ALJ:  (1) plaintiff claimed that he was disabled based on foot and back problems, but these problems existed for many years and plaintiff was able to work despite them; (2) plaintiff inconsistently sought treatment; (3) the treatment was conservative; and (4) the treatment helped alleviate his symptoms. A major weakness in plaintiff's brief is that it ignores several of these rationales. The Court will discuss these rationales first before considering plaintiff's arguments.

The first rationale was explained as follows:

> Based on the medical evidence and claimant's subjective reports, claimant's primary issues revolve around his alleged back and leg pain. However, a review of the record shows that although claimant claims to have a history of leg and back pain for many years, he had been able to work [with] these conditions in the past. Claimant testified that he has had his left foot pain for 15-16 years, and off and on back pain since he was 25 years old (Hearing Testimony). Yet, the record shows that he worked consistently from 1999 to 2015 (Exhibits 3D). He testified that he stopped working when he was discharged from his job as a design packager with no reason given, although he suspected that it was due to his medical condition.

R. 75. None of plaintiff's arguments challenge this rationale. Plaintiff has not claimed that the

ALJ got the facts wrong or that this rationale was impermissible. The Seventh Circuit has held it

is "legitimate" to consider this type of argument. *See, e.g., Lafayette v. Berryhill*, 743 Fed. Appx.

697, 699-700 (7th Cir. 2018) (the ALJ was permitted to discredit the claimant's testimony based

on the fact that he "worked for years despite back pain and quit only after his supervisor assigned

him additional exertional duties"). Plaintiff has not offered a theory in his brief that would rebut

this rationale—for example, that his condition suddenly worsened around the time he filed for

disability.[2] For these reasons, the ALJ's first rationale remains unrebutted and, in this Court's

view, by itself goes a long way to meeting the substantial evidence standard.

The second rationale is that plaintiff inconsistently sought treatment. Specifically, the

ALJ noted that plaintiff did not seek *any* treatment for his back or leg in the first year after

quitting his job. R. 74. The ALJ also noted that treatment records stopped as of December 5,

2016—in other words, plaintiff received *no* treatment in the six months leading up to the hearing.

R. 75. Plaintiff also ignored these points. But it is yet another plank supporting the ALJ's

decision. ALJs are permitted to consider these treatment gaps. *See* SSR 16-3p ("[I]f the

frequency or extent of the treatment sought by an individual is not comparable with the degree of

the individual's subjective complaints, or if the individual fails to follow prescribed treatment

---

[2] At the hearing, plaintiff testified at one point that his back problem "became extremely problematic" in December 2016. R. 34. (In this same portion of this testimony, he also stated that the foot pain remained the same since the 1999 motorcycle accident.) This one statement alluding to a deterioration theory regarding the back is not a valid rebuttal to the ALJ's first rationale. First, plaintiff did not make the argument in his brief. Second, the timing is off. Plaintiff's testimony was that the back problem became worse beginning in December 2016, which was roughly a year and a half after the disability application was filed. It thus would not explain why plaintiff claimed he could not work as of May 15, 2015.

that might improve symptoms, we may find the alleged intensity and persistence of an

individual's symptoms are inconsistent with the overall evidence of record.").[3]

The third rationale is that plaintiff only received conservative treatment. Plaintiff does not

directly address whether the treatments he received—physical therapy and several epidural

injections—should be characterized as conservative. The Government asserts that they should

be. Dkt. #24 at 7, 11 (citing *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009)). Plaintiff's only

rebuttal is to suggest that he was considering getting more intense treatments. Specifically,

plaintiff states that the treatment notes for his last visit with Dr. Otengbediako in December 2016

indicated that the doctor would consider recommending an ablation or a spinal cord stimulator if

further pain injections did not help. R. 361. However, this argument falters because plaintiff has

not pointed to any evidence showing that he followed through and received these new

treatments. Thus, if anything, the failure to pursue them cuts against plaintiff's implied argument

that he needed more than conservative treatments. *See, e.g., Imse v. Berryhill*, 752 Fed. Appx.

358, 362 (7th Cir. 2018) ("The ALJ reasonably considered the impact of Imse's noncompliance

when assessing the limiting effects of her spinal impairment; Imse declined two doctors'

recommendations for physical therapy, and when she finally did seek treatment, she failed to

follow through.").

The fourth rationale—that the conservative treatments alleviated his symptoms—is the

weakest of the four rationales. Still, the Court does not find that the ALJ relied on any clear

factual misstatement or committed any legal error in discussing this issue. To summarize, Dr.

Otengbediako administered two pain injections in the fall of 2016. The ALJ noted that plaintiff

reported "60% pain relief" after the first injection and about the same after the second one.  R.

---

[3] Plaintiff did not argue at the administrative level, nor has he argued here, that he lacked insurance or that there was some other barrier to getting treatment. Plaintiff has been represented by counsel throughout all these proceedings.

75. Plaintiff complains that the ALJ wrongly believed that these injections provided lasting improvement when it was in fact only short-lived. The Court notes that the ALJ did acknowledge in the summary of medical visits that plaintiff later indicated to Dr. Otengbediako that the initial improvement after the first injection was not long-lasting. *See, e.g.,* R. 75 (acknowledging that plaintiff later reported that "his back pain had returned"). This statement would suggest that the ALJ was aware of these facts. At the same time, later in the decision, the ALJ did make a more general statement that plaintiff's condition has "improved with physical therapy and epidural injection," thus raising a question as to exactly how the ALJ viewed the issue of temporary versus permanent improvement. R. 75. The Government attempts to navigate this impasse by noting, first, that Dr. Otengbediako told plaintiff ahead of time that relief would be temporary and, second, that the doctor recommended repeated injections. The Government seems to be suggesting that ongoing periodic injections might have been a viable long-term treatment approach. But this argument isn't developed, and the Court cannot find any medical statement in the record clearly endorsing it.

But we need not further delve into these questions because even if this Court accepted plaintiff's criticisms of this last rationale, this would not necessarily mean that a remand was required under SSR 16-3p. As the Seventh Circuit has stated, an ALJ's credibility finding should not be overturned unless it was "patently wrong." *Sawyer v. Colvin*, 512 Fed. Appx. 603, 607 (7th Cir. 2013). More specifically, the Seventh Circuit has stated that not "all" of the ALJ's credibility rationales need to be found valid to affirm, as long as "*enough* of them are." *Halsell v. Astrue*, 357 Fed. Appx. 717, 722 (7th Cir. 2009) (emphasis in original). In short, this Court must give the ALJ "substantial deference" in this area. *Cf. Ray v. Berryhill*, 915 F.3d 486, 490 (7th

Cir. 2019) ("this is the rare case in which the claimant can overcome the 'considerable deference' we afford [credibility] findings unless they are 'patently wrong'").

In sum, plaintiff's opening brief ignores the majority of the ALJ's rationales.[4] The decision to ignore these rationales, which represent major roadblocks, makes plaintiff's path to a remand very difficult, if not impossible.

Turning to plaintiff's three primary arguments, the Court begins with the first one, which is the claim that the limitation that plaintiff be allowed to alternate between sitting or standing would improperly impose a burden on employers to provide an adjustable computer desk that could be raised or lowered as needed. As plaintiff puts it, the "ALJ carved out a niche, but non-existent workplace scenario." Dkt. #20 at 5. But this argument overlooks that it was the vocational expert, not the ALJ, who gave provided the testimony supporting this limitation. The vocational expert testified that employers in this field generally would allow this type of accommodation. R. 40. In other words, the niche need not be carved out because it already exists. One more point—plaintiff's counsel was given the opportunity to cross-examine the vocational expert, but declined to ask any questions. Counsel thus apparently did not believe at the time of the hearing that the vocational expert's testimony was ambiguous or flawed.

Plaintiff's second argument is that the sit-stand option was internally contradictory with the finding that plaintiff was limited to sedentary work. The Government argues that the Seventh Circuit "had repeatedly upheld such RFC restrictions." Dkt. #24 at 13 (citing to Seventh Circuit cases). Here again, plaintiff's failure to file a reply brief leaves the Government's arguments unrebutted, and this Court sees no obvious flaw in those arguments.

---

[4] Plaintiff also has not challenged the ALJ's decision not to give controlling weight to the medical opinions from Dr. Dwyer and Dr. Osmani. R. 77.

Plaintiff's third argument is a collection of cherrypicking arguments directed at the credibility finding and other issues. Plaintiff argues that the ALJ relied on an "inaccurate" interpretation of the evidence and, more generally, failed to view the record in a "holistic fashion." The Court does not find that these arguments rise to the level to justify a remand.

As for the allegation of inaccuracy, the only specific fact cited by plaintiff is that the ALJ "mistakenly indicated that [plaintiff] had a normal gait." Dkt. #20 at 9. But as the Government correctly points out, this was not a factual error. Plaintiff is referring to the ALJ's statement from plaintiff's visit with Dr. Otengbediako on September 15, 2016. However, the record indicates that the ALJ was correct in stating that the doctor noted, during this particular visit, that plaintiff had a normal gait. *Cf.* R. 75 (ALJ: "claimant's gait was normal"); *with* R. 355 (Dr. Otengbediako: "Gait: Normal"). It is also true that at other visits, doctors found that plaintiff had an antalgic gait, as well as a significant leg-length discrepancy. Dkt. #20 at 9. But as the Government argues, the findings that plaintiff had an antalgic gait at some visits and that he had a leg-length discrepancy "scarcely supports" the conclusion that he could not do sedentary work. Dkt #24 at 11. This Court agrees.

Plaintiff next argues that the ALJ gave improper weight to plaintiff's daily activities as set forth in a daily function report. *See* Ex. 9E. This argument consists of only a short paragraph. Plaintiff argues that the ALJ overlooked certain caveats and qualifications regarding the activities at issue. But in reading the ALJ's decision, the Court does not find that the ALJ ignored any material facts. For example, plaintiff complains that although he could complete household and personal hygiene tasks, it would "take 3-4 times longer than normal." Dkt. #20 at 10. Plaintiff suggests that the ALJ overlooked this fact. But the ALJ stated in the decision that plaintiff would have to "take longer" to complete these tasks given his medical limitations. R. 76.

Plaintiff also argues, in a paragraph, that the ALJ did not consider his testimony that he sometimes "needed to lay on his back or sit in a recliner with his knees bent to recover from prolonged sitting, walking, or standing." Dkt. #20 at 11. It appears that the ALJ did not discuss this one particular contention, but the Court finds that the failure to do so was harmless error given all the other rationales discussed above. *See, e.g., Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012) (affirming despite a "not perfect" decision and despite "shortcomings" in the ALJ's descriptions of plaintiff's complaints about needing lie down several times a day). As noted above, the ALJ found that several factors (*e.g.* conservative and inconsistent treatment) cast doubt on plaintiff's testimony about the nature of his subjective symptoms. Moreover, plaintiff has not cited to any evidence in the medical record indicating that he needed to sit in a recliner. As the Government notes, when plaintiff went to see Dr. Osmani in October 2015, which was just several months after plaintiff filed his disability application, he made "no mention of back pain or foot neuropathy." Dkt. #24 at 3. Instead, the main complaint he raised was dyspepsia (indigestion). R. 327.

Plaintiff complains that the ALJ also did not discuss his problems with focus and concentration, which he argues would make it difficult to do "more than 100 skills" the DOT states are needed to do computer assisted design. Dkt. #20 at 12. However, as the Government persuasively argues, the ALJ made a reasonable decision not to include a limitation for concentration issues since that there was "no mention of concentration issues anywhere in the medical record." Dkt. #24 at 12. The Court finds that the complete lack of any supporting evidence in the medical record supports the decision not to include a concentration limitation, as does the fact that plaintiff was able to work for 16 years with this same general level of pain.

In sum, the Court finds that, although the ALJ's decision was not perfect, the ALJ nonetheless relied on multiple valid rationales that collectively constitute substantial evidence. As the Supreme Court observed fairly recently, substantial evidence is not a high standard, and requires only evidence that "a reasonable mind might accept as adequate." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for summary judgment is denied; the government's motion is granted; and the decision of the ALJ is affirmed.

Date:  March 9, 2020                    By:    _____

                                                            Iain D. Johnston
                                                            United States Magistrate Judge